## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| ROBERT M. KOWALSKI, | ) | Case No. 18-9130 |
| | ) | |
| Debtor. | ) | Honorable Jacqueline P. Cox |
| | ) | |
| FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver for Washington Federal Bank for Savings, | ) ) ) ) | |
| | ) | |
| Plaintiff, | ) ) | Adv. No. _____ |
| v. | ) ) | |
| ROBERT M. KOWALSKI, | ) ) | |
| Defendant. | ) | |

**COMPLAINT SEEKING DENIAL OF DEBTOR'S DISCHARGE**

Creditor, Federal Deposit Insurance Corporation, as Receiver for Washington Federal Bank for Savings ("FDIC-R"), pursuant to title 11, United States Code (the "Bankruptcy Code"), Sections 727 (a)(2), (a)(3), (a)(4), and (a)(6), hereby complains against Robert M. Kowalski, the Debtor ("Debtor"), as follows:

**RELEVANT PROCEDURAL BACKGROUND**

1. On March 29, 2018 ("Petition Date"), the Debtor filed his voluntary petition for relief under Chapter 11 of the Bankruptcy Code, thereby commencing the case (the "Case").

2. Between the Petition Date and the Conversion Date (defined below), the Debtor operated as a debtor-in-possession pursuant to 28 U.S.C. § 1107 and used a bank account for the Debtor's post-petition operations at US Bank ("DIP Account").

3. On May 31, 2018, the U.S. Trustee moved to dismiss or convert the Case, or in the alternative, appoint a Chapter 11 Trustee (Dkt. 47).

4. On July 26, 2018, based on the Debtor not disclosing in his Statement of Financial Affairs nine properties and a pre-petition lawsuit, which he continued to prosecute without court authority, the Court ordered the appointment of a Chapter 11 Trustee (Dkt. 95).

5. On August 3, 2018, the U.S. Trustee moved for the approval of its appointment of Gus A. Paloian as the Chapter 11 Trustee in this Case (Dkt. 101).

6. On August 7, 2018, the Court issued an Order Approving the Appointment of Gus A. Paloian as the Chapter 11 Trustee ("Trustee") (Dkt. 106).

7. On September 25, 2018, the Trustee filed a Motion to Convert Case to Chapter 7 for failure to maintain appropriate insurance, file timely operating reports, and disclose limited liability companies and a state court lawsuit attempting to obtain the return of real properties.  The Trustee further alleged the Debtor had admitted to collecting rents after the Trustee was appointed, but failed to turn over those rents, to identify the tenants from whom the rents were collected and provide tax bills and rent rolls (Dkt. 173).

8. On November 30, 2018, the Court entered an order converting the Case to Chapter 7 ("Conversion Date") (Dkt. 276).

9. This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334(b).

10. This adversary proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I).

11. The Case is a Chapter 7 proceeding which is currently pending in this district.  Thus, venue of this adversary proceeding properly lies within this district pursuant to 28 U.S.C. § 1409.

12. The time in which a creditor may file a complaint objecting to Debtor's discharge has not expired (*See* Order Extending Time to File Objection to Discharge to April 8, 2020, dated September 3, 2019 [Dkt. 707]).

13. Upon information and belief, the Debtor is an individual domiciled at 5233 W. 87th Street in Oak Lawn, Illinois.

### FACTS COMMON TO ALL COUNTS

14. As of the Petition Date, the Debtor was in the business of real estate development and owned, individually and through multiple entities, real property interests, which were also managed by the Debtor.

    A. **Rule 2004 Examination**

15. On June 15, 2018, the Court granted the FDIC-R's Motion to Authorize Issuance of Subpoenas for Depositions and Documents pursuant to Federal Rule of Bankruptcy Procedure 2004 ("Rule 2004 Examination"), permitting the Rule 2004 Examination of the Debtor. (Dkt. 61)

16. The Debtor failed to appear for his Rule 2004 Examination in September 2019 and FDIC-R filed a Motion to Compel his attendance, which was granted on October 5, 2018 (Dkt. 193).

17. As a result of the Debtor's egregious misconduct towards the Trustee and his blatant refusal to produce documents on the second day of his examination, on November 1, 2018, the Court held the Debtor in contempt of court and incarcerated him until the contempt was purged (Dkt. 227).

18. On November 8, 2018, after producing documents to the FDIC-R, the Rule 2004 Examination was scheduled by this Court for specific days in November and December 2018 at the Office of the U.S. Trustee and the Debtor was conditionally released from confinement (Dkt. 246, 247).

19. While those examinations took place, additional examination days were necessary. On January 4, 2019, the Debtor's attendance for his Rule 2004 Examination was continued to January 7, 2019 (Dkt 334) and then again until February 7, 2019 (Dkt. 370).

20. After the Debtor again failed to appear for his Rule 2004 Examination on February 7, 2019, and in light of his previous contemptuous behavior, on February 20, 2019, the Court held the Debtor in civil contempt and ordered him incarcerated until he purged his contempt (Dkt. 435).

21. The Rule 2004 Examination of the Debtor was finally completed on March 14, 2019, purging his contempt (Dkt. 470).

### B. Financial Disclosure Schedules

22. The Debtor filed his initial schedules in this Case on April 25, 2018, listing only seven properties (Dkt. 22). The Debtor also filed his initial Statement of Financial Affairs on April 25, 2018 (Dkt. 24).

23. On May 24, 2018, the Debtor filed an amendment to his Schedule A/B Property, adding two more properties and listing land trusts holding title to his properties (Dkt. 39).

24. On June 13, 2018, the Debtor filed a second amendment to his Schedule A/B Property, listing seven limited liability companies (Dkt 52).

25. The Debtor did not disclose any interest in checking, savings, or other financial accounts on his Schedules.

26. Direct or indirect interest in bank accounts of the Debtor's limited liability companies was never listed on the Schedules.

27. The Schedules did not list real property located at 11611-11613 S. Vincennes in Chicago, Illinois ("11611 S. Vincennes") as owned by the Debtor.

28. In fact, 11611 S. Vincennes was owned by the Debtor as beneficial owner in a land trust.

4

### i. Mountain Duck Properties

29. On October 3, 2017, the Debtor filed a complaint for imposition of constructive trust in the Circuit Court of Cook County against his daughter, Angelica A. Kowalski, and Mountain Duck Properties, LLC ("Mountain Duck"). The Debtor alleged all of the properties owned by Mountain Duck in land trusts were placed there "to shelter them from actual and contemplated litigation and potential creditor claims" against the Debtor. The Debtor sought to impose a constructive trust on the assets.

30. During the Case, on July 16, 2018, without court authority, the Debtor filed a Motion for Summary Judgment in the above matter seeking to impose a constructive trust and requiring Mountain Duck to convey to the Debtor nine (9) properties in Chicago, Illinois: 7957-59 S. Harvard, 1852-54 S. Central Park, 11752 S. Vincennes, 843 E. 65th Street, 2408 E. 97th Street, 6612 S. Drexel, 6426 S. Maryland, 5650 S. Bishop, and 7426 S. Peoria (the "Mountain Duck Properties").

31. Direct or indirect interests in Mountain Duck or the Mountain Duck Properties was never disclosed on the Schedule A/B Property or its amendments.

32. The Debtor declared, under penalty of perjury, that each of the Debtor's Schedules and Statements were correct, accurate and true and the Debtor personally signed and authorized his then counsel to file each of the Debtor's Schedules and Statements with the Bankruptcy Court (Dkt. 22, 39, 52).

### C. Periodic Report

33. On May 1, 2018, the Debtor filed his Periodic Report Regarding Value, Operations and Profitability of Entities ("Periodic Report") as of December 31, 2017 (Dkt. 28). The Debtor disclosed his ownership/equity interests in three entities: Piorun Properties, LLC ("Piorun

Properties"), Indomitable, LLC ("Indomitable") and Invincible, LLC ("Invincible"). The Periodic Report disclosed Piorun Properties was holding a fee simple interest in real properties at 6500 S. Drexel, Chicago, Illinois; 1946 S. Canalport, Chicago, Illinois (the "Canalport Property"); 2647 W. 23rd Place, Chicago, Illinois; and 1748 N. Bissell, Chicago, Illinois. The Periodic Report described properties owned by Indomitable as "six multi-family properties and three vacant lots." There were no addresses given. Invincible was described as owning a "vacant lot" with no address disclosed. The Periodic Report set forth cash and gross rents, but did not disclose any bank accounts.

34. In fact, Piorun Properties did have a bank account at Byline Bank (the "Piorun Account").

35. In fact, Indomitable did have a bank account at Byline Bank (the "Indomitable Account").

36. On May 24, 2018, the Debtor filed his Amended Periodic Report, listing a fourth entity, Burros Blancos, LLC ("Burros Blancos") (Dkt. 40). The amendment stated that Burros Blancos had no assets or liabilities as of December 31, 2017.

37. In fact, Burros Blancos did have a bank account at Byline Bank (the "Burros Blancos Account").

38. On June 13, 2018, the Debtor filed his Second Amended Periodic Report, adding a fifth entity, Alta Vista Properties, LLC ("Alta Vista") (Dkt. 55). The Debtor asserted Alta Vista owned a fee simple interest in real property located at 1823 N. Keeler, Chicago, Illinois and 6522 N. Ellis, Chicago, Illinois.

39. The Debtor never disclosed the real property at 851 E. 63rd Street, Chicago, Illinois (the "63rd St. Property") as owned by Piorun Properties and the Canalport Property was actually owned by Indomitable, not Piorun Properties.

40. Piorun Properties held a fee simple interest in the 63rd Street Property (Dkt. 28, 40, 55).

41. The Debtor declared in each of his Periodic Reports, under penalty of perjury, that the listing of entities was complete, accurate and truthful to the best of his knowledge.

### D. Monthly Summaries of Cash Receipts and Disbursements

42. The Debtor filed Summaries of Cash Receipts and Cash Disbursements (collectively, the "Operating Reports") on: June 13, 2018 for period ending March 31, 2018 (Dkt. 54); on June 20, 2018 for period ending April 30, 2018 (Dkt. 64) and for period ending May 30, 2018 (Dkt. 65); and on July 24, 2018 for period ending June 30, 2018.

43. The Debtor did not file Operating Reports for July and August 2018, as required, by a debtor-in-possession.

44. The Operating Reports fail to disclose from whom receipts were received. The April Operating Report failed to attach a bank account statement. The May Operating Report failed to disclose disbursements.

45. The Debtor signed each Operating Report and declared, under penalty of perjury, that each and every Operating Report was correct, accurate and true. The Debtor personally authorized his then counsel to file each of the Operating Reports with the Bankruptcy Court.

### E. Counsel

46. When the Petition was filed, the Debtor was represented by Joseph Cohen. Cohen withdrew as counsel on July 25, 2018 (Dkt. 44) and the Debtor proceeded *pro se*. The Debtor was an attorney with a suspended license.

47. On October 14, 2018, Ernesto Borges filed an appearance as counsel for the Debtor. (Dkt. 191) Borges withdrew as counsel for the Debtor on February 22, 2019 (Dkt. 441) and the Debtor has represented himself ever since.

48. On November 26, 2018, Jan Kowalski ("Jan") filed an appearance on behalf of the Debtor (Dkt. 268).

49. As of August 2018, Jan had a client trust fund account at Bank of America ("Jan IOLTA Account").

50. On February 6, 2019, Jan was barred from further participating as Debtor's counsel (Dkt. 404).

F. **The Debtor's Mismanagement and Conversion of Property of the Estate**

    i. **Oak Lawn Property**

51. On or about June 18, 2018 and July 24, 2018, the Debtor purchased three (3) cashier's checks from the Indomitable Account for approximately $21,000, payable to and deposited into the account of Natalie Lira, the Debtor's girlfriend. These Estate funds were then wire transferred to Premium Title Company to partially fund the purchase of the property at 6821 W. 96th Street, Oak Lawn, Illinois ("Oak Lawn Property").

52. On or about October 12, 2018, from estate assets, the Debtor caused estate funds of $75,600 deposited in the Jan IOLTA Account to be wire transferred to Premium Title Company to fund the purchase of the Oak Lawn Property.

53. On October 12, 2018, the Debtor used the foregoing estate funds to purchase the Oak Lawn Property for $95,500, which purchase was concealed from the Trustee.

    ii. **Rents**

54. None of the Operating Reports disclosed from whom rents were collected while the Debtor operated as debtor-in-possession.

55. The Debtor concealed income earned from Estate properties by not depositing the rents in the DIP Account and not accounting for them in the Operating Reports.

56. After the Conversion Date, the Trustee requested in writing that the Debtor provide an accounting of the rents collected during the course of the Chapter 11 bankruptcy, the turnover of rents collected and to cease collection of rents in the future.

57. The Debtor admitted collecting rents since the Petition Date, but ignored and refused to provide an accounting or turn over rents.

### a.   Diversion of Rent Collections

58. The Debtor has never provided an accounting for rent collected while he acted as debtor-in-possession.

59. Since the Petition Date, the Debtor has been engaged in depositing rent checks of approximately $34,600 into unrelated limited liability company accounts. None of these rent checks were deposited into the DIP Account.

60. For instance, (i) Eric Hibbard's (tenant) check for $4,450 relating to 1742 N. Bissell (estate property) was deposited in the Indomitable Account on August 6, 2018; (ii) Janet Garcia's rent check for $1,900 relating to 1918 W. Cermak Road (estate property) was deposited in the Indomitable Account on August 10, 2018; (iii) Almeta Gardner's rent check for $499 relating to 6500 S. Drexel Avenue (estate property) was deposited into the Indomitable Account on August 4, 2018; and (iv) Marilyn Scharko's rent check for 5301 W. Leland Avenue (estate property) was deposited into the Piorun Account on June 8, 2018.

61. After depositing the above funds, the Debtor withdrew the funds in cash.

62. The Debtor concealed the use and existence of the Piorun Account and Indomitable Account from this Court, the Trustee and his creditors.

### b. Colfax Property

63. In July 2018, the Debtor directed Jorge Sanchez ("Sanchez") to collect rents at the property of the estate at 7617 S. Colfax, Chicago (the "Colfax Property"), an 8-10-unit apartment building. The Debtor gave Sanchez a letter to provide to the tenants to pay the rent to Fargo Group, LLC, Sanchez's company.

64. Sanchez was a longtime business partner and independent contractor for the Debtor's real estate development and rental operations.

65. Sanchez collected rents after the Trustee was appointed on August 7, 2018 (collectively, the "Colfax Rent Proceeds").

66. The Debtor never told Sanchez that only the Trustee had authority to collect rent.

67. By September 2018, Sanchez had collected no less than $6,570 in rents and remitted the Debtor $860 in cash, while keeping the balance of the Colfax Rent Proceeds.

68. The Debtor concealed and never directed the turnover of the Colfax Rent Proceeds.

### iii. Cashier's Checks

69. On or after August 31, 2018 and October 25, 2018, the Debtor deposited into the Jan IOLTA account 36 cashier's checks drawn on Byline Bank totaling $352,166.35, for which the Debtor was both the remitter and payee.

70. Of those funds, $95,500 were used to purchase the Oak Lawn Property.

### a. New Cashier's Checks

71. From September 5, 2018 through October 29, 2018, at the Debtor's direction, Jan issued 15 cashier's checks payable to the Debtor totaling $314,417.95 from the Jan IOLTA Account ("Jan IOLTA Account Proceeds").

72. None of the Jan IOLTA Account Proceeds were transferred to the Estate.

5168391/2/13664.008

73. The Debtor never disclosed to and concealed from the Trustee and creditors the existence of the deposit of cashier's checks and the Jan IOLTA Account Proceeds.

### b. Cash Withdrawals

74. Between November 13, 2018 and November 30, 2018, at the Debtor's direction, Jan directed 18 cash withdrawals of Estate funds from the Jan IOLTA Account.

75. On February 21, 2019, the Court entered an order directing the Debtor to turn over to the Trustee $250,000 that was withdrawn from the Jan IOLTA Account (Dkt. 450).

76. On March 20, 2019, the court held the Debtor in civil contempt for failing to turn over the $250,000 to the Estate (as amended, the "Contempt Order") (Dkt. 469).

77. The contempt order was amended, and the contempt continued on April 9, 2019 (Dkt. 490).

78. At subsequent status hearings, the Debtor asserted his Fifth Amendment rights by refusing to answer questions concerning possession of the $250,000. The contempt order was continued and amended on May 10, 2019 (Dkt. 556) and May 31, 2019 (Dkt. 590).

79. The Debtor has been released from incarceration but remains in contempt (Dkt. 723).

80. The Debtor has concealed from the Trustee and creditors possession and use of the Jan IOLTA Account Proceeds.

## COUNT I

### Objection to Discharge Under 11 U.S.C. § 727 (a)(2)(A) and (B)

81. FDIC-R hereby realleges and adopts the allegations set forth in paragraphs 1-80 above as though fully set forth herein.

82. The Debtor's ownership interests, whether direct or indirect, in Mountain Duck, the Mountain Duck Properties and the land trusts holding title, the Mountain Duck lawsuit, the rents,

Case 20-00077   Doc 1   Filed 02/19/20   Entered 02/19/20 10:21:20   Desc Main
          Document      Page 12 of 16

bank accounts of Piorun Properties, Indomitable, and Burros Blancos, the cashier's checks of $352,166.35, and the cash withdrawals of $250,000 were all property of the Estate.

83. The Debtor's failure to disclose and attempt to obfuscate his ownership interests in and connections with the interests set forth above amount to the concealment of property of the Estate after the date of the filing of the Petition, with actual intent to hinder, delay and/or defraud creditors in violation of 11 U.S.C. § 727(a)(2)(A) and (B).  Specifically, the Debtor:

 a. Failed to disclose his lawsuit to declare the Mountain Duck Properties as an asset of the Estate;

 b. Failed to disclose his legal or equitable interests in Mountain Duck and the Mountain Duck Properties;

 c. Failed to disclose his possession of cashier's checks issued at Byline Bank totaling $352,166.35;

 d. Failed to disclose his possession of $250,000 withdrawn from the Jan IOLTA Account;

 e. Failed to disclose his possession of cashier's checks totaling $314,417.95 issued from the Jan IOLTA Account;

 f. Failed to disclose the Indomitable Account, Piorun Account, and the Burros Blancos Account; and

 g. Failed to disclose his possession of rental income collected from Estate properties.

WHEREFORE, FDIC-R respectfully requests that this Court enter an order pursuant to Section 727(a)(2)(A) and (B) of the Bankruptcy Code entering judgment in its favor denying the entry of an order granting the Debtor a discharge under Section 727 and granting such other relief as is just and equitable.

## COUNT II

### Objection to Discharge Under 11 U.S.C. § 727(a)(3)

84. FDIC-R hereby realleges and adopts the allegations set forth in paragraphs 1-80 above as though fully set forth herein.

85. As debtor-in-possession, the Debtor had a fiduciary obligation to creditors to collect property of the Estate, be accountable for all property received, and furnish financial information concerning the Estate pursuant to Section 704 of the Bankruptcy Code.

86. Without legitimate purpose or justification, the Debtor concealed, destroyed or failed to keep or preserve recorded information from which the Debtor's financial condition or business transactions might be ascertained, by failing to maintain or provide the creditors and later, the Trustee, an accounting of: (i) the rents collected and cash flow generated by properties of the Estate; (ii) disposition of cashier's checks totaling $352,166.35; and (iii) the disposition of transactions in the Piorun Account, Indomitable Account, and Burros Blancos Account.

87. No circumstances warrant the Debtor's failure to maintain and provide these records.

WHEREFORE, FDIC-R respectfully requests that this Court enter an order pursuant to Section 727(a)(3) of the Bankruptcy Code entering judgment in its favor denying the entry of an order granting the Debtor a discharge under Section 727 and granting such other relief as is just and equitable.

## COUNT III

### Objection to Discharge Under 11 U.S.C. § 727(a)(2)

88. FDIC-R hereby realleges and adopts the allegations set forth in paragraphs 1-80 above as though fully set forth herein.

89. Without legitimate purpose or justification, the Debtor intentionally hindered, delayed or defrauded FDIC-R and the Trustee's administration of the Estate and concealed or permitted to be concealed property of the Estate. Specifically, these actions include:

   a. The deposit of cashier's checks totaling $352,166.35 into the Jan IOLTA Account and later transfer to the Debtor and unknown parties;

   b. The purchase of the Oak Lawn Property;

   c. The collection and use of the Colfax Rent Proceeds;

   d. The Debtor's interests in Mountain Duck and the Mountain Duck Properties; and

   e. The disposition of Estate funds in the Piorun Account, Indomitable Account, and Burros Blancos Account.

WHEREFORE, FDIC-R respectfully requests that this Court enter an order pursuant to Section 727(a)(2) of the Bankruptcy Code entering judgment in its favor denying the entry of an order granting the Debtor a discharge under Section 727 and granting such other relief as is just and equitable.

## COUNT IV

### Objection to Discharge Under 11 U.S.C. Section 727(a)(4)

90. FDIC-R hereby realleges and adopts the allegations set forth in paragraphs 1-80 above as though fully set forth herein.

91. The Debtor signed each of his Schedules, Statements, and Operating Reports under penalty of perjury.

92. The Debtor knowingly and fraudulently made a false oath in the foregoing when he:

   a. Failed to truthfully and accurately declare and identify his true interests in the Mountain Duck Properties;

   b. Failed to truthfully and accurately declare and identify his interests and affiliations in Mountain Duck, LLC and its land trusts;

5168391/2/13664.008

 c. Failed to truthfully and accurately declare and identify his true interests in the cashier's checks;

 d. Failed to truthfully and accurately declare and identify his interests in the transfer and disposition of the cashier's checks identified in paragraph 71 herein;

 e. Failed to truthfully and accurately declare and identify his withdrawal of proceeds from the Jan IOLTA Account.

 f. Failed to truthfully and accurately declare and identify the Colfax Rent Proceeds;

 g. Failed to truthfully and accurately declare and identify his cash withdrawals from rental proceeds;

 h. Failed to truthfully and accurately declare and identify his interests in the Oak Lawn property;

 i. Failed to truthfully and accurately declare and identify properties owned by Mountain Duck, Piorun Properties, Indomitable and Invincible in which the Debtor had an interest; and

 j. Failed to truthfully and accurately declare and identify his true interests in the Piorun Account, Indomitable Account, and the Burros Blancos Account.

WHEREFORE, FDIC-R respectfully requests that this Court enter an order pursuant to Section 727(a)(4)(A) and (D) of the Bankruptcy Code entering judgment in its favor denying the entry of an order granting the Debtor a discharge under Section 727 and granting such other relief as is just and equitable.

## COUNT V

### Objection and Discharge Under 11 U.S.C. § 727(a)(6)(A) and (B)

93. FDIC-R hereby realleges and adopts the allegations set forth in paragraphs 1-80 above as though fully set forth herein.

94. The Debtor has refused to obey a lawful order of the Court by specifically refusing to turn over funds of the Estate totaling $250,000 that derived from cashier's checks and were directed by the Court, pursuant to the Contempt Order, to be turned over on March 11, 2019.

95. The Debtor has refused a lawful order to turn over to creditors and the Trustee records of those cashier's checks and withdrawals and rent collections.

96. The Debtor has refused to answer a material question approved by the Court as to the whereabouts of the $250,000 transferred by the Debtor on the ground of privilege against self-incrimination.

WHEREFORE, FDIC-R respectfully requests that this Court enter an order pursuant to Section 727(a)(6)(A) and (B) of the Bankruptcy Code entering judgment in its favor denying the entry of an order granting the Debtor a discharge under Section 727 and granting such other relief as is just and equitable.

Respectfully submitted,
**FEDERAL DEPOSIT INSURANCE CORPORATION,**
**AS RECEIVER FOR WASHINGTON FEDERAL BANK FOR SAVINGS**

By: /s/ *Eric S. Rein*
Eric S. Rein
John W. Guzzardo
**HORWOOD MARCUS & BERK CHARTERED**
500 W. Madison Street, Suite 3700
Chicago, Illinois 60661
(312) 606-3200 (phone)
rrein@hmblaw.com
jguzzardo@hmblaw.com

*Counsel for Federal Deposit Insurance Corporation, as Receiver for Washington Federal Bank for Savings*